**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0873-23

NYKIA L. WILLIAMS,

     Plaintiff-Appellant,

v.

JOSEPH W. FERRO and
CITY OF NEW YORK
DEPARTMENT OF
SANITATION,[1]

     Defendants-Respondents.

_____

Submitted November 6, 2024 – Decided January 8, 2025

Before Judges Bishop-Thompson and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-1566-21.

John J. Pisano, attorney for appellant.

D'Arcambal Ousley & Cuyler Burk, LLP, attorneys for respondents (Nada M. Peters and Christy A. Ramunno, on the brief).

---

[1] Improperly pled as New York City Department of Sanitation.

PER CURIAM

On November 20, 2020, a New York City garbage truck driven by a New York public employee collided with plaintiff Nykia L. Williams' vehicle on a street in Jersey City. The primary issues in this personal injury case involve principles of comity and choice of law, specifically New York's tort claim notice requirements.

Plaintiff appeals from an October 20, 2023 order granting defendants' motion to dismiss plaintiff's complaint with prejudice. She contends the court erred in its choice of law determination, and alternatively, in dismissing her complaint with prejudice because she failed to comply with New York's tort claim notice requirements. Based upon our de novo review, we affirm but for different reasons than those expressed by the trial court.

I.

We discern the facts from the motion record. On November 20, 2020, plaintiff, a New Jersey resident, was driving eastbound on Secaucus Road in Jersey City. A New York City garbage truck made a left hand turn directly in front of plaintiff's vehicle, causing a collision. Plaintiff's vehicle was damaged. Approximately eight days later, plaintiff had an MRI of her spine due to injuries she allegedly suffered during the incident.

A-0873-23

According to plaintiff, she mailed a completed "Claim Against the City of New York, Vehicular Property Damage" form (claim form) to the Comptroller of the City of New York, describing the damage to her car, "within approximately two weeks" of the collision. The directions annexed to the claim form provided:

> All claims arising from this accident must be filed, in duplicate, with the Comptroller of the City of New York, Municipal Building, One Centre Street, Room 1225, New York, N.Y. 10007 within ninety (90) days from the date of the accident. Claims may also be filed electronically at www.comptroller.nyc.gov.
>
> You may obtain the forms necessary to file such claim by requesting them directly from the Comptroller at the above address, by calling (212) 669-8750, or by visiting the above website.

After receiving no response, plaintiff attempted to contact the claims department on several occasions. Plaintiff claimed on one occasion she spoke with an individual who advised her that she would be contacted; however, no one returned her call.

Plaintiff retained an attorney, and on March 12, 2021, she filed a complaint in New Jersey asserting a negligence claim against the City of New York Department of Sanitation and its employee, Joseph W. Ferro. On September 20, 2023, defendants filed a motion to dismiss for failure to state a

claim, in lieu of filing an answer, pursuant to Rule 4:6-2(e) because the complaint failed to allege that any notice of claim had been served upon the City in a timely manner.

On October 20, 2023, the court granted defendants' motion to dismiss the complaint with prejudice, in an order with an accompanying statement of reasons. This appeal follows.

II.

Plaintiff contends the court erred in dismissing her complaint with prejudice; and specifically, she alleges the court erred: (1) in its choice of law analysis, finding New York law applied to her negligence claim arising from an incident in New Jersey; and alternatively, (2) by finding plaintiff had not substantially complied with the notice requirement under New York law.

"When a civil action is brought in New Jersey, our courts apply New Jersey's choice-of-law rules in deciding whether this State's or another state's" tort claim statute against a municipality governs the matter. McCarrell v. Hoffmann-LaRoche, Inc., 227 N.J. 569, 583 (2017). As our Supreme Court has confirmed, "[t]he analytical framework for deciding how to resolve a choice-of-law issue is a matter of law;" thus, our review of the court's legal conclusions is

de novo.  Id. at 583-84.  We owe no deference to the court's interpretation of the law in deciding such matters.  Ibid.

## A.

"The first inquiry in any choice-of-law analysis is whether the laws of the states with interests in the litigation are in conflict."  Id. at 584.  "A conflict of law arises when the application of one or another state's law may alter the outcome of the case . . . or when the law of one interested state is 'offensive or repugnant' to the public policy of the other[.]" In re Accutane Litig., 235 N.J. 229, 254 (2018) (internal citations omitted) (quoting DeMarco v. Stoddard, 223 N.J. 363, 383 (2015)); see McCarrell, 227 N.J. at 584.  Regardless of which state's law governs, the paramount question is whether "the result would have been the same had [the] suit been brought in New York."  Rose v. Port of New York Auth., 61 N.J. 129, 140 (1972).

Here, the issue is whether New Jersey and New York's tort claims statutes are in conflict.  Because of their similarities, the court found "no conflict" in the laws of New York and New Jersey.

Both New York and New Jersey have specific tort laws governing claims against public entities that provide some level of immunity to those entities.  Under the New Jersey Tort Claims Act (the TCA), N.J.S.A. 59:1-1 to 12-3,

public entities enjoy immunity because the Legislature has declared it "to be the public policy of this [s]tate that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein." N.J.S.A. 59:1-2. A public entity includes, "the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. 59:1-3. The TCA "bars civil actions against public entities unless certain procedures are strictly followed." Lebron v. Sanchez, 407 N.J. Super. 204, 213 (2009) (citing N.J.S.A. 59:8-3; Hawes v. N.J. Dep't of Transp., 232 N.J. Super. 160, 164 (Law Div. 1988) aff'd, 232 N.J. Super. 159 (App. Div. 1988)).

With the enactment of the relevant municipal laws in New York, "the legislature has created certain protections for municipalities . . . that do not apply to private tort defendants[.]" Colon v. Martin, 149 N.E.3d 39 (N.Y. 2020) (Fahey, J. concurring) (citing Bender v. New York City Health & Hosps. Corp., 345 N.E.2d 561 (N.Y. 1976)). "As part of these protections, a litigant generally may not maintain a tort claim against a municipality unless the litigant served upon the municipality a notice of claim within [ninety] days of the claim's

A-0873-23

accrual[.]" Jaime v. City of New York, 237 N.E.3d 796 (N.Y. 2024); N.Y. Gen. Mun. L. §§ 50-i(1); 50-e(1).

Although we recognize the commonalities between New York and New Jersey's tort claims laws, including notice requirements and time limitations, a primary distinction exists with the law's applicability to public entities. Because the City of New York Department of Sanitation is not a New Jersey public entity, New Jersey's TCA would not apply. For purposes of a lawsuit in New Jersey, defendants would be treated as private entities; whereas, if New York municipal tort law were to apply, defendants would be eligible for certain protections. Therefore, we disagree with the court's assessment as to whether a conflict in the laws exist and conclude that a conflict does exist between the two states' laws as to their applicability to public entities.

B.

Having determined a conflict between the states' laws exists, we turn next to analyzing whether New York or New Jersey's tort claims laws apply to this case. In conducting this analysis, the court incorrectly applied the "flexible governmental-interest" test in this case citing to Veazey v. Doremus, 103 N.J. 244, 247 (1986). However, in P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132 (2008), New Jersey adopted the most-significant-relationship test for deciding

7

choice of substantive law in tort cases. McCarrell, 227 N.J. at 589. Our Supreme Court determined that the most-significant-relationship test was "more nuanced" than the governmental-interest test and used "presumptions and detailed considerations that bear on conflicts analyses." Camp Jaycee, 197 N.J. at 142 n.4.

Under the most-significant-relationship test, the "starting point" for a conflict-of-laws analysis is that "the substantive law of the place of injury is presumed to be the governing law [.] . . . " McCarrell, 227 N.J. at 590 (citing Camp Jaycee, 197 N.J. at 141). This presumption is not overcome unless the other state "has a more significant relationship with the parties and the occurrence based on an assessment of each state's contacts under section 145 and the guiding principles enunciated in section 6 [of the Second Restatement of Conflicts of Laws]." Ibid. The section 145 factors are as follows:

> (a) the place where the injury occurred;
>
> (b) the place where the conduct causing the injury occurred;
>
> (c) the domicil[e], residence, nationality, place of incorporation[,] and place of business of the parties; and
>
> (d) the place where the relationship, if any, between the parties is centered.

8

[Id. at 590 n.8.].

Section 6's guiding principles for a court's consideration when "determining whether another state has a more significant relationship to the parties and the occurrence," include:

> (a) the needs of the interstate and international systems;
>
> (b) the relevant policies of the forum;
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
>
> (d) the protection of justified expectations;
>
> (e) the basic policies underlying the particular field of law;
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.
>
> [Id. at 593 (citing Restatement (Second) of Conflict of Laws § 6(2) (Am. L. Int. 1971)).]

These guiding principles maintain the importance of qualitative factors, including "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." Erny v. Est. of Merola, 171 N.J. 86, 101 (2002) (quoting Fu v. Fu, 160 N.J. 108, 122 (1999)).

9

Finally, the principle of comity applies to the choice-of-law analysis by requiring the court to examine the public policy "of the forum state and the impact on that policy of enforcing the foreign proceeding." City of Philadelphia v. Austin, 86 N.J. 55, 64 (1981). In determining whether to apply another state's laws as a matter of comity, other considerations apply: "(1) the convenience of the litigants and witnesses, as well as the interests of justice (forum non conveniens); (2) the dissimilarity of remedies in the different jurisdictions; and (3) the existence of conflicts with the local public policy of the forum." Ibid.

Applying the most-significant-relationship test and weighing the appropriate factors and guiding principles, we begin by noting that the conduct and injury occurred in New Jersey, the parties' relationship is centered in New Jersey where the accident occurred, and plaintiff is a resident of New Jersey. Although defendants are domiciled in New York, the municipal vehicle was in New Jersey. These factors weigh in favor of maintaining the presumption in favor of New Jersey law. However, these factors alone do not end the inquiry. The analysis "is not merely quantitative," but qualitative, and includes consideration of the guiding principles in section 6 and principles of comity.

The court noted that there were "no interests on the part of New Jersey because no New Jersey public employee or entity is being sued . . . . " However,

plaintiff is a New Jersey resident, and New Jersey has an interest in applying its laws to acts occurring within its boundaries and to its citizenry. On the other hand, New Jersey and New York's public policies recognize that immunity from tort liability involving municipalities is the general rule, and as a result, have enacted similar statutes imposing strict requirements upon litigants pursuing such claims.

Importantly, "the public policy of New Jersey is to effectuate the laws of sister states." Austin, 86 N.J. at 64 (citing State v. Lueder, 74 N.J. 62, 70 (1977)). Extending the same immunity protections under New York law to a New York public entity comports with New Jersey public policy and principles of comity and weighs significantly in this analysis. Therefore, as the court correctly concluded, "under principles of comity, NJ [c]ourts must recognize the New York Municipal immunity laws as set forth in that statute."

Given the similarities between New Jersey and New York's notice requirements and time limitations, applying New York law to this case does not offend New Jersey's public policy. For instance, in New Jersey, "[p]rior to filing a complaint [under the TCA], a plaintiff must submit a notice of claim to the public entity within ninety [90] days of the claim's accrual, N.J.S.A. 59:8-8(a), and must file suit within two years after the claim's accrual, N.J.S.A. 59: 8-8(b)."

11

Lebron, 407 N.J. Super. at 214 (citing Beauchamp v. Amedio, 164 N.J. 111, 121 (2000)). The statute also specifies the contents of the form. N.J.S.A. 59:8-4. Adequate notice to the public entity "assures full and fair disclosure . . . 'of information necessary for the orderly and expedient administrative disposition of claims.'" Lebron, 407 N.J. Super. at 214 (quoting 1972 Task Force Comment on N.J.SA. 59:8-6)).

Similarly, under New York's General Municipal Laws, a notice of claim is required as a "condition precedent" to pursuing a claim against a public entity:

> In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, as defined in the general construction law, or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises [.] . . .
>
> [N.Y. Gen. Mun. L. § 50-e(1)(a).]

"The notice of claim provisions of the General Municipal Law were enacted to enable municipalities 'to pass upon the merits of a claim before the initiation of litigation and thereby forestall unnecessary lawsuits.'" Nasca v. Town of Brookhaven, 781 N.Y.S.2d 137 (App. Div. 2004). New York law also specifies the contents of the claim notice as follows:

Form of notice; contents. The notice shall be in writing, sworn to by or on behalf of the claimant, and shall set forth: (1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained so far as then practicable but a notice with respect to a claim against a municipal corporation other than a city with a population of one million or more persons shall not state the amount of damages to which the claimant deems himself entitled, provided, however, that the municipal corporation, other than a city with a population of one million or more persons, may at any time request a supplemental claim setting forth the total damages to which the claimant deems himself entitled. A supplemental claim shall be provided by the claimant within fifteen days of the request. In the event the supplemental demand is not served within fifteen days, the court, on motion, may order that it be provided by the claimant.

[N.Y. Gen. Mun. L. § 50-e(2).]

New York and New Jersey also permit a party to seek leave to serve a late notice alleging negligence within one year after the claim accrued. See N.Y. Gen. Mun. L. § 50-e(5); N.J.S.A. 59:8-9. Both New York and New Jersey prohibit the filing of lawsuits on such claims for a period following service of the required notice. N.Y. Gen. Mun. L. § 50-i(1); N.J.S.A. 59:8-8. Both states also establish time limitations for the filing of lawsuits based on the notice of

13

claims – New York is one year and ninety days; New Jersey has a two-year time frame for filing. N.Y. Gen. Mun. L. § 50-i(1); N.J.S.A. 59:8-8(b).

As our Supreme Court in In re Accutane Litig. noted, "[o]ur interstate system recognizes that the forum state should not apply its choice-of-law principles in a way that discriminates against out-of-state residents. That is the essence of comity." 235 N.J. at 262. To apply New Jersey law to this case, defendants would lose the limited immunity protections afforded to a municipality under New York law. Although the court did not identify a conflict between New York and New Jersey tort claims statutes when applying the former governmental-interest test, based upon our de novo review and applying the most-significant-relationship test and principles of comity, we are satisfied that the court reached the correct choice-of-law determination, finding New York law applicable to this case.

III.

Plaintiff contends the court erred in dismissing her complaint with prejudice because the claim form substantially complied with the requirements of General Municipal Law § 50-e. Plaintiff does not dispute the statutory requirements set forth in New York law. Rather, she contends she substantially complied and acted in good faith. She further asserts there was no prejudice to

defendants due to any omissions or deficiencies in the claim form and service thereof, and the court should have disregarded any purported deficiencies. We disagree.

The court found the claim form invalid for several reasons: (1) it did not identify plaintiff's alleged bodily injuries; (2) plaintiff failed to establish compliance with the time provision; and (3) the form was undated and unsigned.

The purpose of the statutory notice of claim requirement is to afford a public entity adequate opportunity to investigate the circumstances surrounding an accident and to explore the merits of a claim promptly. Vallejo-Bayas v. New York City Tr. Auth., 962 N.Y.S.2d 203 (App. Div. 2013). "A court may, in its discretion, grant an application for leave to amend a notice of claim where [a] mistake, omission, irregularity, or defect in the original notice was made in good faith, and it appears that the public corporation was not prejudiced thereby." Roberson v. New York City Hous. Auth., 931 N.Y.S.2d 900 (App. Div. 2011); see N.Y. Gen. Mun. L. § 50-e(6).

However, "[a] notice of claim may be amended only to correct good faith and nonprejudicial technical mistakes, omissions, or defects, not to substantively change the nature of the claim or the theory of liability." Castillo v. Kings Cnty. Hosp. Ctr., 52 N.Y.S.3d 451 (App. Div. 2017); see also La Rocco

v. City of New York, 322 N.Y.S.2d 163 (App. Div. 1971) (holding plaintiff could not amend subrogee's notice of claim for property damage by adding belated notice of claim for personal injuries). A proposed amendment must "represent a mere correction of a mistake or irregularity, such as a quantitative increase in the amount of damages claimed." Lombardo v. Cnty. of Nassau, 791 N.Y.S.2d 292 (Sup. Ct. 2004). The amendment cannot add "damages of a fundamentally different nature, requiring substantially different evidence in support of the claim or defense," because defendant would not have adequate notice. Ibid.

The notice of claim requirement is not a ministerial task; it is a "condition precedent" to the filing of a lawsuit and "an indispensable element of the substantive cause of action." Ragosto v. Triborough Bridge & Tunnel Auth., 173 Misc.2d 560, 561 (App. Term 1997) (quoting Jackson v. Police Dep't. of City of N.Y., 500 N.Y.S.2d 553 (App. Div. 1986) (explaining that a condition precedent conditions a right of action and is a substantive limitation on the right); see also E. Williamson Roofing & Sheet Metal Co. v. Town of Parish, 530 N.Y.S.2d 720 (App. Div. 1988). "A complaint that fails to allege compliance is legally insufficient and must be dismissed for failure to state a

cause of action." <u>Town of Parish</u>, 530 N.Y.S.2d at 720 (citing <u>Davidson v. Bronx Mun. Hosp.</u>, 473 N.E.2d 761 (N.Y. 1984)).

Plaintiff claims she mailed the claim form regarding "Vehicular Property Damage" to the office of the Comptroller of the City of New York at the address provided with the form but produced no proof of mailing or service. The form is undated and unsigned. New York General Municipal Law § 50-e requires the notice to be "in writing, sworn to by or on behalf of the claimant . . . . "

The form is also deficient because it fails to set forth the bodily injury plaintiff claims she sustained. On the claim form, plaintiff only mentions property damage and provides the police report number. This form was not amended to include a claim for bodily injury. Plaintiff argues that she was unaware of bodily injury on the day of the collision. However, she obtained an MRI eight days after the incident, which provided sufficient time prior to the expiration of the ninety-day deadline to amend her claim form.

The court properly concluded that plaintiff's form did not substantially comply with the statutory requirements, and service was deficient pursuant to New York General Municipal Law § 50-e(3), which requires service by registered or certified mail. N.Y. Gen. Mun. L. § 50-e(3). Thus, the court correctly determined plaintiff's notice of claim was deficient and not in

17

substantial compliance with the statutory requirements. As a result, plaintiff's complaint failed to state a claim pursuant to <u>Rule</u> 4:6-2(e). We are satisfied the court correctly applied New York statutory requirements to the undisputed facts and dismissed the complaint for failing to comply with the notice requirements under New York law.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-0873-23